IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HARRIET IRENE WIDDOWS,        )
Individually, and as Personal )
Representative of the Estate  )
of Thomas Francis Widdows,    )
Deceased, Plaintiff,          )
                              )
            Plaintiff,        )
                              )     No.  CV-07-795-HU
     v.                       )
                              )
FRED MEYER, INC., a Delaware  )
Corporation; THE KROGER Co.,  )
an Ohio Corporation; KROGER   )
GROUP COOPERATIVE, INC., an   )     OPINION & ORDER
Ohio Corporation; THE KROGER  )
CO. HEALTH & WELFARE BENEFIT  )
PLAN,                         )
                              )
            Defendants.       )
_____)

James L. Hiller
HITT HILLER MONFILS WILLIAMS LLP
411 S.W. Second Avenue, Suite 400
Portland, Oregon 97204-2508

     Attorney for Plaintiff

David Wilson
Francis T. Barnwell
BULLARD SMITH JERNSTEDT WILSON
1000 S.W. Broadway, Suite 1900
Portland, Oregon 97205

     Attorneys for Defendants

1 - OPINION & ORDER

HUBEL, Magistrate Judge:

Plaintiff Harriet Widdows, appearing individually and as personal representative of the estate of her late husband, Thomas Francis Widdows (Widdows), brings this action against Fred Meyer, the Kroger Company, the Kroger Group Cooperative, and the Kroger Company Health & Welfare Benefit Plan. Plaintiff brings two claims under the Employee Retirement Income Security Act (ERISA), and two state common law claims.

Defendants move to dismiss on the basis that plaintiff failed to exhaust the administrative claims process. Alternatively, defendants move to stay the action pending exhaustion of the administrative claims process.

All parties have consented to entry of final judgment by a Magistrate Judge in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). Although I dismiss the claims, and therefore grant the motion, I do so for reasons other than those articulated by defendants.

BACKGROUND

Based on the Amended Complaint, plaintiff is the personal representative of the estate of her late husband, who died on October 12, 2006, at the age of sixty-seven. Fred Meyer is wholly owned by defendant The Kroger Company, an Ohio corporation, and/or The Kroger Group Cooperative. Fred Meyer and The Kroger Company issued various benefits to its employees through The Kroger Health & Welfare Benefit Plan. Fred Meyer and The Kroger Company were sponsors of the Plan under ERISA, and The Kroger Company was the Plan administrator. One of the plan benefits was group life insurance.

2 - OPINION & ORDER

Wididows worked for over twenty years as a pharmacist for Fred Meyer. In early 2000, he was diagnosed with lymphoma. In October 2005, he went on short term disability in anticipation of a stem cell transplant, after receiving approval of his request for a non-Family Medical Leave Act leave of absence from October 16, 2005, to April 15, 2006. By April 2006, it became apparent that Wididows was not likely to recover from his illness and that he might not be able to return to work.

On March 31, 2006, Fred Meyer/The Kroger Company, issued a letter to Wididows that stated:

> This letter is to confirm the offer to rehire you to Fred Meyer pharmacy as soon as you are able to return to work after your stem cell transplant. Due to your short-term disability leave of absence being maximized in April of 2006, Fred Meyer will have to terminate your employment with our company in order for you to be eligible to obtain COBRA insurance benefits for your medical needs. Having searched all options, this is what needs to be done for your benefit. Based on your health, we would like to rehire you with the same vacation benefits that you currently have. . . . Upon your return to work, we will assess the possibility of having your original hire date of 01/17/1987 reinstated. The reinstatement will be assessed by the benefits department in conjunction with the VP of pharmacy.

Am. Compl. at ¶ 9.

Plaintiff alleges that at no time did Fred Meyer/Kroger ever consider or communicate to Wididows how the fact of being terminated and possibly later rehired, would impact his right to life insurance benefits. No defendant ever notified Wididows that Fred Meyer/Kroger's actions regarding the changes in his employment status and termination of his employment, would result in the termination of his life insurance benefits. None of the defendants notified Wididows that he had conversion rights under the applicable policy, by which he could have obtained life insurance with

benefits equal to one and one-half times his basic annual earnings. Plaintiff alleges that to the contrary, defendants told Widdows that his life insurance could not be retained.

After Widdows's death, plaintiff attempted to assert rights to the life insurance.  In an April 4, 2007 letter, Chip Collier of Fred Meyer/Kroger, told Widdows's son, Thomas A. Widdows, that Widdows had not been eligible to port his benefits into a private policy because he did not have voluntary life insurance and that he was not entitled to continued benefits.  In the April 4, 2007 letter, plaintiff was informed by defendants that a claim for life insurance benefits would not be honored, in that Widdows was not eligible for insurance under the plan at the time of his death.

In the Amended Complaint, plaintiff brings four claims:  (1) a claim under ERISA for denial of life insurance benefits pursuant to 29 U.S.C. § 1132(a)(1)(B); (2) a claim under ERISA for equitable estoppel; (3) negligence; and (4) wrongful discharge.

STANDARDS

A motion to dismiss for failure to exhaust nonjudicial remedies "is a matter in abatement, not going to the merits of the claim," and is properly brought as a nonenumerated Rule 12(b) motion.  Ritza v. International Longshoremen's & Warehousemen's Un., 837 F.2d 365, 368-69 (9th Cir. 1988).  Failure to exhaust nonjudicial remedies "is not properly raised in a motion for summary judgment."  Id. at 368.

This "distinction between summary judgment and dismissal for matters in abatement bears on the district court's authority to resolve factual disputes[.]"  Id. at 369.  In a summary judgment proceeding, the court may not resolve material factual issues as

4 - OPINION & ORDER

1   those are left for the jury's consideration. Id. However, "where
2   a factual issue arises in connection with a jurisdictional or
3   related type of motion, the general view is that there is no right
4   of jury trial as to that issue and that the court has a broad
5   discretion as to the method to be used in resolving the factual
6   dispute." Id. (internal quotation and ellipsis omitted).

DISCUSSION

8       In this case, it is relevant to note at the outset that
9   plaintiff raises her common law negligence and wrongful discharge
10  claims as alternative claims. She states, in support of the
11  negligence claim, that the claim is brought "only in the event that
12  the Court finds that Widdows was neither enrolled in nor eligible
13  in a life insurance plan governed by ERISA[.]" Am. Compl. at ¶ 25.
14  This allegation is incorporated by reference into the wrongful
15  discharge claim. Id. at ¶ 28.

16      Additionally, plaintiff's jurisdictional allegations are
17  conditional. She asserts that "[t]o the extent Widdows was
18  eligible for benefits under the Plan, jurisdiction is conferred" on
19  the court by ERISA. Id. at ¶ 4. In their Answer to the Amended
20  Complaint, defendants admit that the court has jurisdiction under
21  29 U.S.C. § 1132(e)(1) and (f). Answer at ¶ 4.

22      Continuing with her jurisdiction allegations, plaintiff then
23  asserts that "[t]o the extent that Widdows is not eligible for
24  benefits under the Plan, plaintiff's state law claims (her third
25  and fourth claims for relief) are not subject to preemption by
26  ERISA and supplemental jurisdiction is conferred on the court."
27  Am. Compl. at ¶ 5. Defendants deny those allegations. Answer at
28  ¶ 5.

5 - OPINION & ORDER

1    Plaintiff explains that this case was originally filed in
2  state court and asserted claims of negligence, wrongful discharge,
3  and breach of contract.  On May 29, 2007, defendants removed the
4  case to federal court, based on ERISA preemption.  Plaintiff did
5  not move to remand the case back to state court because the
6  original complaint did allege an "action on a life insurance
7  policy," which plaintiff concedes was governed by ERISA.

8    However, on October 17, 2007, the Ninth Circuit decided Miller
9  v. Rite Aid Corp., 504 F.3d 1102 (9th Cir. 2007), which, according
10  to plaintiff, changed the legal landscape.  In response to Miller,
11  plaintiff filed the operative Amended Complaint with its
12  alternative claims and conditional jurisdictional allegations.  The
13  resolution of the instant motion requires me to interpret Miller
14  and apply it to the allegations in this case.

15    Generally, under Ninth Circuit precedent, a claimant must
16  exhaust administrative remedies before the claimant can bring an
17  ERISA action in court.  Abatie v. Alta Health & Life Ins. Co., 458
18  F.3d 955, 961 n.2 (9th Cir. 2006) ("The ERISA statutes do not
19  require exhaustion of administrative remedies before a claimant can
20  bring an action in court, but our cases suggest that a claimant
21  must exhaust administrative remedies first.").  Defendants rely on
22  this governing principle to support their motion to dismiss for
23  plaintiff's failure to exhaust the available administrative
24  remedies.

25    The problem, however, is that under Miller, Widdows is no
26  longer considered a claim participant or beneficiary and thus, he
27  has no ERISA claims for which exhaustion is required.  Rather,
28  because his status as a participant or beneficiary is fundamental
6 - OPINION & ORDER

1   to the right to bring an ERISA claim, his status, assessed under

2   *Miller* as a non-participant or beneficiary at the time of his

3   death, requires the dismissal of the ERISA claims. Additionally,

4   while defendants argue that this Court nonetheless retains

5   jurisdiction over the state common law claims by virtue of their

6   being preempted by ERISA, Widdows's non-participant status under

7   *Miller* similarly precludes ERISA preemption. Accordingly, I remand

8   the state claims back to state court.

9        *Miller* was an ERISA preemption case, not an exhaustion case,

10  but it nonetheless controls. "A civil action under ERISA may be

11  brought by a 'participant' in or 'beneficiary' of an ERISA plan."

12  *Miller*, 504 F.3d at 1105-06 (citing 29 U.S.C. § 1132(a)(1)).

13  *Miller* explained that

14       Miller's estate and her beneficiaries[] may bring a civil
         suit under ERISA only if Miller was a "participant" in an
15       ERISA plan at the relevant time. ERISA defines a
         "participant" as "any employee or former employee . . .
16       who is or may become eligible to receive a benefit of any
         type from an employee benefit plan . . . or whose
17       beneficiaries may be eligible to receive any such
         benefit." 29 U.S.C. § 1002(7). The Supreme Court has
18       interpreted this provision to mean that a party is a
         "participant" if he is an employee in, or reasonably
19       expected to be in, currently covered employment, or if he
         is a former employee who has a reasonable expectation of
20       returning to covered employment or a "colorable claim" to
         vested benefits. *Firestone Tire & Rubber Co. v. Bruch*,
21       489 U.S. 101, 117 (1989).

22  *Miller*, 504 F.3d at 1106.

23       In *Miller*, the decedent had been employed by Rite Aid until

24  the time of her death. In February 2001, she was diagnosed with

25  terminal cancer and went on disability until her death one year

26  later, in February 2002. While she was on disability, her employer

27  terminated its group life insurance plan provided by ReliaStar and

28  replaced it with a group plan provided by Standard Insurance. The

7 - OPINION & ORDER

decedent was not enrolled in the Standard plan because she was not
included in the list of employees exempt from the plan's "active at
work" requirement.  Thus, the decedent was not enrolled in a group
life insurance plan after Rite Aid terminated the prior plan.  The
decedent also did not convert the prior group plan into an
individual plan.

Given that the decedent was actually still employed by Rite
Aid when she died, the question asked by the Ninth Circuit to
determine if she was a "participant," was whether she was either
(1) covered by an ERISA life insurance plan at the relevant time,
or (2) whether she may have become eligible for benefits from such
a plan at such time.  Id. at 1106.  To establish that she "may
become eligible," she had to "have a colorable claim that (1) she
will prevail in a suit for benefits, or that (2) eligibility
requirements will be fulfilled in the future."  Id. (internal
quotation and brackets omitted).

To answer these questions, the court had to first identify the
relevant time for determining whether the decedent was a
participant.  Id.  The court had previously held that whether a
living party is a participant or beneficiary is determined as of
the time the lawsuit is filed.  Id.  However, the court had never
identified the applicable time for evaluating the claims of a
decedent's estate and beneficiaries.  Id.

The court held that in the case of a deceased employee, the
court looks to the time of the employee's death to determine
whether he or she is covered by an insurance plan.  Id. at 1107.
This is also the applicable time for determining whether the
decedent had a colorable claim to benefits.  Id.

8 - OPINION & ORDER

1    In analyzing the facts under this standard, the Miller court
2    stated that at the time the decedent died, she did not qualify as
3    a "participant" in any ERISA life insurance plan because at that
4    time, she was not covered by any life insurance policy and she had
5    no colorable claim to benefits under any plan. Id. The decedent
6    was not covered by the prior plan because Rite Aid terminated the
7    plan before she died. Id. She did not have a colorable claim to
8    benefits under the prior plan because life insurance plans have no
9    obligation to pay benefits to any person who is still alive at the
10   time of termination. Id. The court noted that none of the former
11   members of the prior plan had any colorable claim to benefits after
12   the plan was terminated. Id.

13   The decedent was also not covered by the Standard plan that
14   replaced the prior plan because the Standard plan's "active-at-
15   work" requirement made her ineligible for enrollment. Id. at 1108.
16   If she was never eligible for coverage under the Standard plan, she
17   could not have a colorable claim to benefits under that plan. Id.
18   The court also explained that because the decedent herself was not
19   a participant in any ERISA plan, her estate could bring a suit
20   under ERISA. Id.

21   The decedent's children could also not bring a suit as
22   "beneficiaries" of an ERISA plan because the decedent was not a
23   participant in any plan. Id. ERISA defines a beneficiary as
24   someone designated by a participant, or "by the terms of an
25   employee benefit plan, who is or may become entitled to a benefit
26   thereunder." 29 U.S.C. § 1002(8). The court explained that just
27   as it looked to the time of the employee's death to determine
28   whether he is a "participant," it looked to the time of death to

9 - OPINION & ORDER

determine whether the employee's children were beneficiaries.  Id.
The court stated that the claim of the decedent's children to
benefits under ERISA can be no greater than the decedent's claim.
Id.

In the briefing on the instant motion, plaintiff states that
defendants have not provided a definitive statement as to whether
Widdows was a participant in the plan who was eligible for life
insurance benefits at the date of his death.  Plaintiff notes that
the record suggests that that is defendants' position, but there is
no affirmative, unequivocal statement to that effect.  See Exh. A
to Thomas A. Widdows's Declr. (Apr. 4, 2007 letter from Collier
stating, in part, that "the only life insurance that can be ported
into a private policy is voluntary life insurance, not basic life
insurance.  Unfortunately, your father was not enrolled in
voluntary life insurance."); see also Answer at ¶ 11 (admitting
that Chip Collier of Kroger sent an email to Widdows's son on April
4, 2007, and further admitting that the April 4, 2007 email stated
that Widdows did not have life insurance coverage under the plan at
the time of his death); Id. at ¶ 13 (denying the allegations in
paragraph 13 of the Amended Complaint in which plaintiff alleges
that "Widdows was entitled to continue basic life insurance
benefits" under the Plan's provisions).

Plaintiff notes that in support of the motion to dismiss,
defendants submit the declaration of Kathleen Lengle, Manager of
Kroger Benefits Systems & Services, who states that Widdows's
employment with Fred Meyer terminated on April 16, 2006, and that
neither he, nor plaintiff converted his group life insurance policy
to an individual plan within the time allowed by the plan.  Lengle

1    Declr. at ¶ 8.

2         Plaintiff contends that Lengle's statement, combined with
3    Collier's April 4, 2007 email, noted above, suggests that
4    defendants do not believe that Widdows was a participant in the
5    group life insurance plan at the time of his death and thus, there
6    is no ERISA cause of action under Miller and thus, any requirement
7    of exhaustion would be futile.  At the May 20, 2008 oral argument
8    on the motion, defendants' counsel confirmed on the record that
9    defendants do in fact believe, and would assert in any
10   administrative proceeding, that Widdows was not a participant or
11   beneficiary of the life insurance plan.

12        Based on the record, both written and defendants' counsel's
13   statements at oral argument, it is clear that Widdows was not a
14   participant or beneficiary in the life insurance plan at the time
15   of his death and thus, under Miller, he does not have an ERISA
16   claim.  Although defendants suggest that the issue of whether
17   Widdows was or was not a plan participant or beneficiary should be
18   adjudicated in the administrative appeal process, I disagree.

19        First, Miller rejected a similar argument.  There, defendant
20   Rite Aid argued that the extent to which it failed to provide life
21   insurance depended on the terms of the policy in which the decedent
22   was once enrolled.  The court stated that "a party does not become
23   a 'participant' in a plan merely because the court will have to
24   look to the terms of a terminated plan to determine the employer's
25   liability for failure to create a new plan."  Miller, 504 F.3d at
26   1108.  Thus, the court expressed its position that interpretation
27   of plan language is not a prerequisite to determining whether the
28   plaintiff or the decedent was a participant or a beneficiary.

1    Second, Miller and other cases indicate that the question of
2    whether the plaintiff, or the decedent in the instant case, is a
3    participant or beneficiary, is a question of law for the court
4    because it is determinative of the court's jurisdiction and the
5    plaintiff's standing.  Notably, the Miller decision itself, after
6    concluding that the appropriate time for the determination is the
7    date of death, then went on to analyze whether the decedent or her
8    beneficiaries were participants or beneficiaries under the ERISA
9    statute as of the date of death.

10    In Harris v. Provident Life & Accident Ins. Co., 26 F.3d 930
11    (9th Cir. 1994), a former employee brought an action alleging state
12    law causes of action for misrepresentation and breach of contract
13    with respect to coverage under the employer's health care plan.
14    The former employee also brought an ERISA claim for breach of
15    fiduciary duty.  In the context of discussing federal jurisdiction,
16    the court noted that a federal court does not have jurisdiction to
17    hear a civil action under ERISA brought by a person who is not a
18    participant, beneficiary, or fiduciary.  Id. at 933.  The court
19    noted that it had previously held that ERISA jurisdiction did not
20    extend to the claim of a former employee who was not a plan
21    participant in an employee benefit plan.  Id.

22    The court stated that whether a living person is a plan
23    participant is decided as of the time of the filing of the lawsuit.
24    Id.  The court, as in Miller, quoted the relevant Supreme Court
25    case regarding the interpretation of the relevant statutory
26    language.  Id.  The court then itself determined whether the
27    plaintiff fit the definition and held that he was not a plan
28    participant and thus, it had no jurisdiction to hear the ERISA

12 - OPINION & ORDER

1  claim for breach of fiduciary duty.  Id.

2      In a case originally before Judge Marsh, the plaintiff brought

3  an ERISA breach of fiduciary duty claim.  McLeod v. Oregon

4  Lithoprint, Inc., 46 F.3d 956 (9th Cir. 1995), vacated on other

5  grounds, 517 U.S. 1116 (1996).  The defendant argued that she could

6  not recover under ERISA because she was not a plan participant.

7  Both parties agreed that the issue of whether she was a plan

8  participant as defined by ERISA was a legal question for the

9  district court to resolve.  Id. at 957-58.  The court went on to

10 discuss the issue, noting initially that whether an employee is a

11 participant in an ERISA plan is critical because it involved both

12 standing and subject matter jurisdiction.

13     Based on these cases, the determination of whether plaintiff

14 or the decedent was a participant or beneficiary as defined in the

15 ERISA statute, is a threshold question of law for the court because

16 it implicates the court's jurisdiction.  It is immaterial that the

17 cited cases addressed the possible preemption of ERISA claims

18 rather than exhaustion because the legal issue is the same in

19 either context.

20     As of the time of his death, Widdows was not a group life

21 insurance plan participant.  He was not an employee in currently

22 covered employment.  He was not a former employee with a reasonable

23 expectation of returning to covered employment or who had a

24 colorable claim to benefits.  See Miller, 504 F.3d at 1107 n. 6

25 (noting that "determining what constitutes a colorable claim to

26 benefits is not the same as determining whether a plaintiff might

27 recover under any cause of action.  The relevant issue is whether

28 a plaintiff might recover under an ERISA claim.").  As in Miller,

because Widdows was not a participant in any ERISA plan, his estate cannot bring a suit under ERISA. Id. at 1108. And, as in Miller, plaintiff is not a "beneficiary" because the claim of Widdows's wife, or children, "to benefits under ERISA can be no greater than [Widdows's] claim." Id.

Because neither Widdows, his estate, nor plaintiff are participants or beneficiaries, there is no viable ERISA claim. Subjecting the two ERISA claims pleaded in this case to the administrative process would be futile. There is no jurisdiction for this court to retain those claims and they are dismissed.

At the end of the May 20, 2008 oral argument, defendants contended that even if I were to dismiss the ERISA claims, this Court would still have jurisdiction over the case by virtue of the state law claims being preempted by ERISA. Because this issue was not raised or briefed, I allowed the parties to file supplemental memoranda on the issue. Having considered those memoranda, and having heard further oral argument, I reject defendants' position.

The thrust of defendant's argument is that the common law claims are based on conduct that is exclusively regulated by ERISA because the claims are essentially directed at the role of the plan fiduciary. As such, defendants contend, Miller does not apply and the claims are preempted. Accordingly, defendants continue, this Court has jurisdiction.

For the purposes of this motion, defendants accept the allegations in support of the common law claims as true, and describe those allegations as ones that the decedent "was misled by the plan administrator, who is a plan fiduciary." Defts' Supp'l Mem. at p. 3. Defendants note that plaintiff alleges that

14 - OPINION & ORDER

defendants' statements about the life insurance "were contrary to the terms of the Plan," and that she alleges that as a result of the plan administrator misleading the decedent about the terms of the plan, the decedent did not apply for or receive benefits. Thus, defendants argue, "the alleged conduct upon which plaintiff bases her common law claims [] falls squarely within ERISA"s regulation of the duties of plan fiduciaries." Id.; see also Id. at p. 6 ("the remarks alleged in the Amended Complaint in this case . . . are specific advice to an employee (or former employee), some of which specifically addresses an ERISA benefit and some of which, plaintiff claims, mislead the employee (or former employee) about an ERISA benefit.   These alleged statements are unmistakably governed by ERISA's fiduciary prescriptions.").

Defendants correctly posit that ERISA preempts not only state laws relating to benefits under ERISA plans, but also state laws purporting to regulate the conduct of ERISA fiduciaries.   E.g., Farr v. US West Commc'ns, Inc., 151 F.3d 908, 913 (9th Cir. 1998) (state law claims of fraud and negligent misrepresentation brought by plaintiffs who alleged that the defendant provided misleading tax consequence information about an early retirement option, were preempted), amended, 179 F.3d 1252 (9th Cir. 1999).   Moreover, plaintiff does not contest defendants' assertion that ERISA may preempt claims whether or not ERISA provides a remedy. E.g., Olson v. General Dynamics Corp., 960 F.2d 1418, 1422-23 (9th Cir. 1991) (rejecting the plaintiff's argument that there was no preemption because ERISA did not provide a remedy and noting "[t]here is simply no reason to assume that Congress intended ERISA's preemptive reach to be coextensive with the Act's civil remedial

15 - OPINION & ORDER

scheme.").

Next, defendants argue that <u>Miller</u> does not apply to the preemption of claims based on allegations of fiduciary misconduct. I disagree.

<u>Miller</u> was a preemption case.  The claims in <u>Miller</u> were similar to the claims at issue here and there is little to distinguish <u>Miller</u> from this case.  As described by the Ninth Circuit, the plaintiffs asserted the following factual allegations in support of their claims:

> Appellants allege, . . ., that Rite Aid offered, as part of the employment agreement with Miller, that Miller would be provided with life insurance.  Appellants also allege that after Miller became terminally ill Rite Aid representatives assured her that she would continue to have life insurance through the time of her death.  Miller allegedly repeated these assurances to her daughter.  Appellants also allege that after Miller's death Rite Aid representatives told her daughter that Miller had life insurance at the time of her death.

<u>Miller</u>, 504 F.3d at 1104-05 (brackets omitted).

With the preemption issue squarely before it and the facts suggesting a breach of fiduciary duty-type claim, the <u>Miller</u> court nonetheless held that the very first question it must decide was whether the decedent was a participant or beneficiary under ERISA. The court noted that state common law claims are preempted by ERISA "'insofar as they may now or hereafter relate to any employee benefit plan' regulated by ERISA."  <u>Id.</u> at 1105 (quoting 29 U.S.C. § 1144(a)).  The court then explained, however, that "before a court wades into this provision's veritable Sargasso Sea of obfuscation, it must first resolve the simpler question of whether a party may assert a claim under ERISA."  <u>Id.</u> (internal quotation omitted).  The court continued, quoting from <u>Harris</u>:

16 - OPINION & ORDER

1    "it would be contradictory to rule that state law claims
2    are preempted where the court has already held that the
     same plaintiffs may not assert a claim under ERISA
3    because they are not 'participants' in the ERISA plan. .
     . . Unlike the Chesire [sic] Cat, one cannot have the
4    smile of preemption without the stripes of
     participation."

5    Id. at 1106 (quoting Harris, 26 F.3d at 934) (ellipsis and "[sic]"

6    in Miller).

7        I agree with plaintiffs that the question of participant

8    status must precede the analysis of whether a claim falls within

9    ERISA and is thus preempted.  Miller teaches that if the plaintiff

10   has no standing as a participant or beneficiary to bring an action

11   under ERISA in the first place, there can be no preemption.  As the

12   court made clear, "ERISA does not preempt the claims of parties who

13   do not have the right to sue under ERISA because they are neither

14   participants in nor beneficiaries of an ERISA plan."  Id.

15       Defendants argue that the Ninth Circuit, in footnote four in

16   the Miller decision, recognized that a plaintiff alleging that he

17   or she lost participant status because of fiduciary misconduct is

18   not barred from seeking a remedy for that misconduct by the fact

19   that he is not a participant at the time he files the lawsuit.

20   Rather, a plaintiff may bring such a claim if he was a participant

21   at the time of the alleged ERISA violation.  Accordingly,

22   defendants contend that here, because some of the alleged

23   misconduct took place while Widdows was still alive and covered by

24   the plan, and thus while he was still a participant, his common law

25   claims are preempted.

26       The Miller court, after noting that the issue before it was

27   one requiring the determination of participant or beneficiary

28   status for claims of a decedent's estate and beneficiaries,

17 - OPINION & ORDER

1  initially stated the court had "repeatedly held that whether a

2  living party is a 'participant' or 'beneficiary' is determined as

3  of the time the lawsuit is filed." Id. at 1106.  The court then

4  noted that it had never identified the applicable time for

5  evaluating the claims of a decedent's estate and beneficiaries.

6  Id.  At the end of that sentence, the court inserted the following

7  footnote:

8       ERISA does not specify the relevant time, but we have
        deviated from our time-of-suit rule only once, when the
9       employer's termination of the employee threatened to
        undermine the enforcement of ERISA's whistleblower
10      provision, 29 U.S.C. § 1140, by an employee who was
        allegedly fired for challenging the decision to terminate
11      the plan. McBride v. PLM Int'l, Inc., 179 F.3d 737, 742-
        43 (9th Cir. 1999).  In this case, we do not need to
12      create an exception to the standard rule because Rite Aid
        did not unlawfully single Miller out in a way that
13      undermined her ability to bring an ERISA claim, or take
        any other action designed to undermine the enforcement of
14      ERISA.

15 Id. at n.4.

16      Defendants contend that the court recognized an exception to

17 Miller's "time-of-death" participant determination for a decedent's

18 estate or beneficiaries in cases with breach of fiduciary duty

19 claims based on the defendant's actions depriving the plaintiff of

20 participant or beneficiary status.

21      I do not read the footnote this broadly.  First, the court, in

22 the footnote, noted an exception to the court's "time-of-suit" rule

23 used for living plaintiffs, not its "time-of-death" rule it

24 established for a decedent's estate or beneficiaries.

25      Second, the court cited McBride, which concerned an ERISA

26 whistleblower claim under section 1140, not a breach of fiduciary

27 duty claim.  The issue in McBride was raised by the plaintiff's

28 allegations that he was discharged because he criticized the

18 - OPINION & ORDER

employer's proposed termination of an employee stock option plan.
At the time he filed suit, he was not a current plan participant or
beneficiary because he was no longer an employee.  And, the
employer had in fact terminated the stock option plan so there was
no reasonable expectation of obtaining plan benefits in the future.
Accordingly, without an exception to the "time-of-suit" rule, the
plaintiff would never have been able to bring an ERISA claim.

The court explained that

> [r]equiring that claimants like McBride be plan
> participants at the time of suit would create a race to
> the courthouse.  Standing would depend upon which event
> occurred first:  the plan's termination, or the
> claimant's filing of a lawsuit.  In this case, McBride
> alleged that his discharge was caused by his criticism of
> PLM's proposed ESOP termination.  Ironic it would be
> indeed to hold that the plan's termination itself then
> deprived McBride of standing to sue.
>
> When an individual alleges, as here, that he was
> discharged in violation of ERISA's whistleblower
> provisions, his employer cannot be allowed to evade
> section 1140 accountability simply by terminating the
> plan and distributing the benefits. . . . If an employee
> is a participant at the time of the alleged ERISA
> violation and alleges that he was discharged or
> discriminated against because of protected whistleblowing
> activities, we hold that such an employee has standing to
> sue under ERISA. . . .
>
>                         * * *
>
> We hold that under section 1140, participant status
> must be adjudged at the time of the alleged ERISA
> violation.  Standing under section 1140 does not depend
> upon whether the former employee seeks to or could obtain
> reinstatement to covered employment.

Id. at 743-44.

McBride clearly limited its "time-of-suit" exception to claims
under section 1140.  Nothing in Miller expands that exception to
common law breach of fiduciary duty claims.

Defendants cite a Third Circuit case which cited McBride as

1   support for its conclusion that a "but for" exception to ERISA
2   standing applied to a breach of fiduciary duty case. Leuthner v.
3   Blue Cross & Blue Shield of Ne. Pa., 454 F.3d 120, 128-29 (3d Cir.
4   2006) (explaining that in its view, a court may find ERISA
5   statutory standing if the plaintiff can plead in good faith that he
6   or she was an ERISA plan participant or beneficiary and that he or
7   she still would be but for the alleged malfeasance of the plan
8   fiduciary). I decline to follow this case because it is not
9   controlling and it goes beyond the exception created in McBride
10  which is limited to section 1140 whistleblower claims.

11      Third, without direction from the Ninth Circuit, I agree with
12  plaintiff that McBride, and thus the citation to it in the Miller
13  footnote, does not stand for the general proposition that the
14  "time-of-suit" rule applies in all circumstances where there is an
15  event that occurs subsequent to the alleged ERISA violation which
16  affects the participant or beneficiary status. Rather, McBride
17  addressed claims arising from events entirely within the control of
18  the employer. The court made clear that actions solely within the
19  employer's control would not defeat an employee from obtaining
20  status as a participant for a whistleblower claim.

21      In the end, I agree with plaintiffs that all the claims in
22  this case start and end with Miller and are resolved by the
23  determination that the decedent's estate and beneficiaries are not
24  ERISA plan participants or beneficiaries. As a result, the ERISA
25  claims are dismissed and there is no federal court jurisdiction
26  over the common law claims by virtue of them being preempted by
27  ERISA.

28      Under 28 U.S.C. § 1447(c), "[i]f at any time before final
20 - OPINION & ORDER

judgment it appears that the district court lacks subject matter

jurisdiction, the case shall be remanded."   28 U.S.C. § 1447(c).

Accordingly, I remand the state common law claims back to state

court.

CONCLUSION

Defendants' motion to dismiss (#21) is granted.   The ERISA

claims are dismissed and the state court claims are remanded.

IT IS SO ORDERED.

Dated this   22nd   day of August         , 2008.




                                   /s/ Dennis James Hubel
_____
                                  Dennis James Hubel
                                  United States Magistrate Judge

21 - OPINION & ORDER